The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* THE COTTAGE CREAMERY Co. (No. 3797)[1]

---

[1] T. D. 47346.

United States Court of Customs and Patent Appeals, October 29, 1934

*Joseph R. Jackson*, Assistant Attorney General (*Marcus Higginbotham, Jr.*, and *Ralph Folks*, special attorneys, of counsel), for the United States.
No appearance for appellee.

[Oral argument October 2, 1934, by Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise here involved consists of cheese cutters which were classified by the Collector of Customs at Cleveland, Ohio, under paragraph 397, Tariff Act of 1930, as articles composed wholly or in chief value of metal, duty being taken at the rate of 45 per centum ad valorem.

The protest on behalf of importers claims the merchandise to be dutiable at 27½ per centum, as machines, provided for in paragraph 372 of said act.

The protest was sustained by the United States Customs Court and the Government has appealed to this court. Before us there was no appearance for appellee either by brief or oral argument.

The pertinent parts of the competing paragraphs read:

PAR. 397. Articles or wares not specially provided for, * * * if composed wholly or in chief value of * * * metal * * * 45 per centum ad valorem.

PAR. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem * * * .

It was stipulated before the trial court that the merchandise in the instant case is similar in all material respects to that which was the subject of that court's decision in Abstract 23705, 63 Treas. Dec. 1438, and that the record in that case might be received in evidence in the instant case.

The decision in Abstract 23705 is very brief, saying merely:

On the record presented the cheese cutters in question were held dutiable as machines at 27½ percent under paragraph 372 as claimed.

No appeal was taken in that case and the question is now before this court for the first time.

The opinion of the trial court in the instant case is also brief. It contains no description of the cutters, but simply recites the stipulation above alluded to and follows the prior abstract decision.

The record (treating the record in the former case as a part thereof) is wholly unsatisfactory in its description of the device involved and

there is nothing to indicate that the trial court had one of the cutters before it for inspection. There is nothing in the report of the collector or in the appraiser's answer to protest, even had they been placed in evidence, which aids in any way in determining what the device looks like or how it operates. In the case decided in Abstract 23705, *supra*, a single witness was called by the protestant and briefly examined. He presented "an illustration of one of these cheese cutters," which was marked as "Illustrative exhibit A."

This exhibit consists of what, we think, may properly be called advertising matter, but it shows nothing of the operation of the device. There is a picture reproduced on a page of the record. Whether it was a part of "Illustrative exhibit A," does not clearly appear. Even if it be assumed to be such, however, in view of certain oral testimony of the witness in which reference seems to have been made to it, we derive little aid from an inspection of same.

It is recited in the part which we have designated as "advertising matter" that—

* * * The extremely practical and precise adjusting to right thickness allows the cheese to be cut up into slices of any desirable thickness.

Simple and dangerless working allows the machine to be attended even by quite inexperienced persons.

The picture shows a stand, having a top, apparently ridged, upon which presumably the block of cheese from which slices are to be cut is placed. This stand has a knife attached to one of its sides, the knife being in a kind of frame and seemingly pivoted at the blade end by means of a rivet.

The witness was asked to "tell the court just how it is used—taking the exhibit and marking any parts of it to which you refer by 1, 2, 3, and so on."

His reply was:

A. I would call the blade "1". Call the stand "2", and the adjustment screw there "3", and adjust the screw to regulate the thickness of the cut. No. 1 is lifted, and the cheese placed on the stand No. 2. After screw No. 3 has been adjusted to the proper thickness, and then the blade is pulled down, cutting the cheese.

Upon cross-examination there was a single question and answer as follows:

This blade, No. 1, that is taken and lifted up by the hand, is it, and put down by the hand?—A. Yes, it is.

The above comprises all the material evidence in the record.

We do not regard this evidence as being sufficient to overcome the presumption of correctness attaching to the collector's classification, nor are we able to construe it as tending to establish the fact that the device is a machine within the meaning of paragraph 372, *supra*.

There is nothing which we can discern that indicates any moving by operation of the device itself of the body or block of cheese to be sliced and the knife which does the slicing is operated wholly by hand. For aught that the record discloses the block of cheese is simply moved by hand against the frame at the side, which frame is adjusted by a set screw, also operated by hand, so that the hand-operated knife cuts a slice of predetermined thickness.

The mere fact that the device is called a "machine" in the descriptive matter of "Illustrative exhibit A" does not render it a machine in fact in any tariff sense.

The device is not shown to have the characteristics essential to bring it within even the broad definition of machine, often quoted from the opinion of this court in the case of *Simon, Buhler & Baumann, Inc.* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537 (that is "a mechanical contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion"), particularly as that definition has been applied in cases such as *United States* v. *Klingerit, Inc.*, 17 C. C. P. A. (Customs) 472, T. D. 43931; *United States* v. *Wm. Goldenblum & Co.*, 18 C. C. P. A. (Customs) 367, T. D. 44616, and others that might be cited. In this connection it is not deemed amiss to direct attention also to our discussion of the *Simon, Buhler & Baumann* case, *supra*, in the case of *United States* v. *Guth Stern & Co., Inc.*, 21 C. C. P. A. (Customs) 246, T. D. 46777.

The judgment of the United States Customs Court is *reversed*.